Ella LOGAN, Plaintiff,

v.

ST. LUKE'S HOSPITAL CENTER and Robert Nelson, Defendants.

No. 75 Civ. 6514 (LFM).

United States District Court,
S. D. New York.

March 4, 1977.

Paul E. Moore, New York City, for plaintiff.

Hawkins, Delafield & Wood, New York City, for defendants; Robert C. Buff, New York City, of counsel.

## OPINION

MacMAHON, District Judge.

Plaintiff, Ella Logan, brings this action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and 42 U.S.C. §§ 1981 and 1983, alleging racial and sexual discrimination by defendants. Specifically, she claims that she was discriminated against, on account of her sex and race, when defendants, St. Luke's Hospital Center ("St. Luke's") and Robert Nelson, Director of Food Services for St. Luke's, hired a white male instead of plaintiff for the position of Assistant Director of Food Services.

The case was tried to the court. We grant judgment for defendants on the basis of the following findings of fact and conclusions of law:

## FINDINGS OF FACT

1. Plaintiff, a black woman, was hired by St. Luke's in 1965 and has been employed there continuously since that time in the Food Services Department, working in various areas and holding various job titles, including Head Dietician, Administrative Dietician, and Food Production Manager, the position she now holds.

2. Prior to her employment at St. Luke's, plaintiff had received a Bachelor of Science degree in dietetics and management and had been employed as a dietician elsewhere, for approximately seven years.

3. The head of the Food Services Department at St. Luke's is the Director of Food Services, and that position has been held by defendant Robert Nelson at all relevant times. The Director has two assistants, an Assistant Director and a Chief Therapeutic Dietician. Plaintiff is one of several Food Production Managers who occupy the next lowest supervisory echelon.

4. The position of Assistant Director of Food Services became vacant in August 1974, when James Lyons, a black male, resigned. Plaintiff first applied for the position in August 1974 by informing Nelson orally of her interest and then in November 1974 by a memorandum expressing her continuing interest in the as yet unfilled position.

5. In or about November 1974, St. Luke's decided to implement the "3-M Integral Heating System" for the heating and serving of hospital foods.

6. The vacancy in the Assistant Director's position was advertised in the in-house "Jobs" blue sheet and in The New York Times. As early as September 4, 1974, five months before the position was filled, the "Jobs" blue sheet listed the qualifications for the position as: "Degree in foods preferred, plus five years experience required."

7. Five St. Luke's employees, including plaintiff, applied for the position, along with from twenty to thirty outside applicants. Several of these applicants were women and several were black.

8. Nelson interviewed plaintiff for the position, along with six or seven other applicants, including the four other hospital employees and two or three of the outsiders.

9. On February 18, 1975, Nelson hired Frank Vesely, a white male from outside the hospital staff, for the position of Assistant Director.

10. Vesely, at the time of his application, had been the Assistant Food Service Director at Brookdale Hospital in Brooklyn. During his nearly three-year tenure at Brookdale, he had had extensive experience and responsibility in connection with the

implementation of the 3-M system at Brookdale, one of the first hospitals in the country to use that system. Prior to his employment at Brookdale, Vesely had had approximately 22½ years' experience in various aspects of food service, as an officer in the United States Army and, more recently, as Assistant General Manager of the employee food service operation of Pan American Air Lines at Kennedy Airport. Vesely had been highly recommended, both by his supervisor at Brookdale Hospital and by the representative of the manufacturer of the 3-M system, who had worked closely with Vesely in implementing the system at Brookdale.

11. Plaintiff had some familiarity with the 3-M system, but she had no actual experience in planning, installation, operation or training of employees in the use of the system.

12. Plaintiff had had numerous disagreements with Nelson, her supervisor, during the course of their working relationship.

13. In January 1973, Nelson had offered plaintiff a promotion to a position as head of the main kitchen at St. Luke's, a job involving greater responsibility and an increase in salary. Plaintiff refused the offer because she felt that the salary increase was insufficient.

14. The position of Chief Therapeutic Dietician, equivalent in the organizational structure to the Assistant Director's position, has been filled by women at all relevant times.

15. There are seventeen managers and supervisors in the Food Services Department, ten or eleven of them are women, eleven are black, three Spanish, and three white.

16. Plaintiff filed complaints with the New York State Human Rights Division and the Equal Employment Opportunity Commission, alleging that the failure of Nelson and St. Luke's to promote her to the position of Assistant Director was the result of discrimination against her on the basis of race and sex. The state agency held hearings and found no reasonable cause to believe that her charges of sexual and racial discrimination were true. The EEOC made a similar conclusion on the basis of the state record.

## CONCLUSIONS OF LAW

■ The applicable criteria, formulated by the Supreme Court in *McDonnell Douglas. Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), require the plaintiff first to establish a prima facie case of racial (or, here, sexual) discrimination. As the Court suggested:

"This may be done by showing (i) that [complainant] belongs to a racial minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications." *Id.* at 802, 93 S.Ct. at 1824.

■ Although in this case factor (iv) of the *McDonnell Douglas* criteria is absent, we note that the Supreme Court indicated that the prima facie proof required will vary with differing factual situations. *Id.* at 802 n.13, 93 S.Ct. 1817. Plaintiff here has shown that she is black and a woman, that she applied and was qualified for the position of Assistant Director of Food Services, and that she was rejected for the job. We conclude that plaintiff has established a prima facie case of racial and/or sexual discrimination. As the Court in *McDonnell Douglas* went on to say, however, the employer may then rebut a complainant's prima facie case of discrimination:

"The burden then must shift to the employer to articulate some legitimate, nondiscriminatory reason for the employee's rejection. We need not attempt in the instant case to detail every matter which fairly could be recognized as a reasonable basis for a refusal to hire." *Id.* 411 U.S. at 802–03, 93 S.Ct. at 1824.

■ We conclude that in this case, defendants have met their burden of articulating sufficient legitimate, nondiscrimina-

tory reasons which fairly could be recognized as a reasonable basis for a refusal to promote plaintiff.

While we are not persuaded that Vesely's experience with the 3-M system, standing alone, would establish that he was more qualified than plaintiff, it is certainly a factor which might legitimately have been taken into account, in view of the hospital's desire to implement that system. Moreover, St. Luke's may have reasonably concluded that Vesely's long practical experience was not only the equivalent of the "preferred" college degree, but also established him as more qualified than plaintiff. Although his hospital experience was relatively short, his varied experience covered those areas of responsibility, including cafeteria and vending machine operations, ordering and inventory control, budget preparation, equipment purchasing and maintenance, which he would encounter as Assistant Director at St. Luke's.

Furthermore, since the Assistant Director would presumably work closely and directly under the supervision of the Director, plaintiff's past frictional working relationship with the incumbent Director could fairly and reasonably be included in the factors to be considered by St. Luke's in making a selection.

This is not a case like *Griggs v. Duke Power Co.*, 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971), where the Court struck down the use of standardized intelligence test scores as threshold qualifications for employment. As the Court defined the issues in *Griggs*, the question was whether such tests, or the requirement of a high school diploma, were permissible when:

> "(a) neither standard is shown to be significantly related to successful job performance, (b) both requirements operate to disqualify Negroes at a substantially higher rate than white applicants, and (c) the jobs in question formerly had been filled only by white employees as part of a longstanding practice of giving preference to whites." *Id.* at 426, 91 S.Ct. at 851.

None of those impermissible factors are present here. It is clear that the qualifications established for the position of Assistant Director were related to job performance. Plaintiff makes no showing that the published qualifications operated to exclude her or anyone else at a higher rate than whites or males.

Finally, the job in question was not previously held exclusively by whites or males. Indeed, the evidence suggests that racial minorities and women comprise a substantial majority of the managerial and supervisory positions in the Food Services Department at St. Luke's. Just prior to the vacancy in the position of Assistant Director, the three highest jobs in the department were held by a white male, a black male and a female. Many of the other upper-level jobs in the department were held by women, blacks and Hispanics, far above their respective proportions in the population.

■ This is simply a case where many qualified applicants seek one position and the employer must make a choice. Many whites and males were rejected along with plaintiff. There are usually many disappointed applicants for jobs, particularly where, as here, the job sought is near the top of a pyramidal organization. No applicant is *entitled* to a position, even though the applicant may be a woman or a member of a minority. Rather, any applicant is entitled to a selection process which is nondiscriminatory because of race or sex. We see nothing in the evidence presented here to indicate that that right, guaranteed by the Constitution and the Civil Rights Act, has been denied to plaintiff.

It is not our role to choose retrospectively the one applicant who is most qualified among many who meet the threshold requirements for the job. As the court said in *Jenkins v. United Gas Co.*, 400 F.2d 28, 35 (5th Cir. 1968):

> "The Federal Judge—awesome as are his responsibilities and powers when invoked by a timely, proper . . . suit—does not sit as a sort of high level industrial arbiter to determine whether employee X

rather then Y should have a promotion. Relative competency and qualification are involved, to be sure. But they are relevant in determining whether denial of the coveted promotion was motivated by unlawful discrimination of race, color, sex or national origin."

The selection in the first instance is for the employer. Once a suit has been properly brought and a prima facie case established, we must then scrutinize carefully the employer's decision as to which applicant is the most qualified, in order to ensure that there is a reasonable basis in fact to support the employer's articulated, *nondiscriminatory* reasons for not hiring or promoting the plaintiff. *McDonnell Douglas, supra,* 411 U.S. at 802, 93 S.Ct. 1817. We conclude that defendants' decision that Vesely was more qualified than plaintiff has such a reasonable basis in fact.

Accordingly, since we find no discriminatory motivation for defendants' refusal to promote plaintiff, the Clerk of the court is directed to enter judgment in favor of defendants dismissing the action, without costs to either party.

The foregoing constitutes the court's findings of fact and conclusions of law.

So ordered.