REPUBLIC STEEL CORPORATION, APPELLEE, *v.* HAILEY, APPELLANT.

(No. 50151 — Decided February 24, 1986.)

*Joseph B Swartz, David W. Leopold* and *John S. Kluznik,* for appellee.

*Bernard Redfield,* for appellant.

MARKUS, P.J. The Ohio Civil Rights Commission decided that the complainant's employer discriminated against her as a female when it disciplined her more severely than a male coworker. Her employer appealed to the common pleas court, which reversed on the ground that the commission's order lacked support from reliable, probative and substantial evidence. Exercising its statutory discretion to accept the court's decision, the commission chose not to appeal that adverse ruling.

However, the complainant, Debra Hailey, has personally appealed the trial court's ruling, arguing that the court did not accord the commission's findings due deference. We reject the employer's contention that the complainant has no standing to appeal, but we affirm the trial court's judgment.

I

The trial court decided this case on the administrative record without re-

ceiving any additional evidence. That record established the following events.

On October 27, 1978, the complainant began work as a laborer for this steel manufacturing company. Her job required no special skills, but the company hired all such employees on a probationary basis for the first thirteen weeks of their employment. The complainant testified that she received no complaints about her work until the day the company discharged her seven weeks later. She did not claim that any company personnel harassed her or abused her in any way during that interval. Her supervisors testified that her work was unsatisfactory throughout her employment there, but acknowledged that they had not told her so before that day.

On December 14, 1978, the complainant's foreman assigned her to shovel coke onto an elevated conveyor belt segment when it fell from that belt. She testified that she understood her assigned area was the entire length of that 1100-foot belt segment. Her foreman said that he directed her to work along the 800 feet of the belt segment furthest from its beginning. There was no walkway from which coke could be shoveled back onto the belt along the 300 feet closer to the belt's beginning.

The complainant's foreman also assigned a male laborer to shovel coke back onto the same conveyer belt segment that day. The foreman testified that the company hired this laborer on the same day that it hired the complainant and that his work had been consistently satisfactory. The complainant said that the foreman assigned them both to the same area. The foreman said that he assigned the male laborer to the area around the junction house at the beginning of that belt segment. In that junction house, an earlier belt segment deposited coke onto the beginning of this segment. According to the foreman, the complainant's work area was 300 to 1100 feet from the male laborer's work area.

At approximately 10:30 that morning, the company's assistant superintendent came upon the complainant and the male laborer resting in that junction house. He told them to get back to work and later reported the incident to their foreman.

At approximately 2:00 that afternoon, the complainant's foreman made his usual rounds. He found the male laborer in the same junction house at another level, warming himself near a heater. The foreman testified that he then inspected the male laborer's work area and found that his assigned work had been done.

Shortly thereafter, the foreman found the complainant in another junction house 1100 feet away at the opposite end of the same belt segment. This segment deposited coal onto the next belt segment there. The foreman testified that he inspected her assigned work area and found that her work was far from complete. He estimated that she had done only one hour's work that day. He asserted that he found her on a level below her duty area. She said that she thought she was still in her assigned area.

At the end of that work day, the foreman noted the afternoon incident in the male laborer's personnel file with the comment: "Employee was warned that if his work habits did not improve he would be subject to disciplinary action." The assistant superintendent made no notation about the morning incident in the male laborer's file.

The foreman made no specific notation in the complainant's file about the afternoon incident, but he did write that her "work performance" that day was "unsatisfactory" and recommended her discharge. The assistant superintendent noted the morning incident in the complainant's file and accepted the foreman's recommendation to discharge her. He also accepted the same foreman's recommendation to discharge a different male laborer whom the com-

pany hired when it hired the complainant.

The employer's Assistant Superintendent of Labor Relations provided statistical data at the administrative hearing. Between July 1, 1978 and June 30, 1979, the company hired 282 employees. Of that total, 234 (83%) were male and 48 (17%) were female. During that same interval the company discharged 36 probationary employees, 32 of whom were males and 4 of whom were females. Thus, it discharged 13.7% of the males it hired that year and 8.3% of the females it hired that year.

## II

Before addressing the complainant's assignments of error, we must consider the employer's contention that she has no standing to bring this appeal. The employer premises this argument on the provisions of R.C. 4112.061(A):

"The Ohio civil rights commission may at its discretion appeal from an adverse judgment rendered by a court. Such appeal shall proceed as in the case of appeals in civil actions * * *."

No statutory provision specifically authorizes the complainant to appeal from the common pleas court judgment. Therefore, the employer asserts that the commission has the exclusive right to challenge any adverse court ruling. The commission elected not to appeal this case, so the employer argues that we should dismiss the complainant's appeal.

However, R.C. 4112.061(B) provides:

"Nothing in this section affects in any manner any provision in sections 4112.01 to 4112.08 * * * relative to the rights of any party * * * to seek such other court action as is provided under such sections."

The complainant was a proper party in the commission's administrative hearing. R.C. 4112.05(D). If the complainant had been "aggrieved" by the commission's administrative decision, she could have appealed to the common pleas

court. R.C. 4112.06(A). Any party who initiates review by the common pleas court must serve the petition "upon the commission and upon all parties who appeared before the commission." R.C. 4112.06(B). The employer did in fact name the complainant as a party and serve her with its petition to the common pleas court. Hence, the complainant was a proper party in the common pleas court.

The statute further directs that the common pleas court judgment "shall be final subject to appellate review." R.C. 4112.06(F). Since the statute expressly authorizes appellate review, the complainant has the same standing to appeal as any other trial court party. Cf. *Spencer* v. *Bd. of Zoning Appeals* (App. 1960), 85 Ohio Law Abs. 366, 13 O.O. 2d 469, 171 N.E. 2d 914; *In re Highland Holiday Subdivision* (1971), 27 Ohio App. 2d 237, 56 O.O. 2d 404, 273 N.E. 2d 903; *Davis* v. *State Personnel Bd. of Review* (1984), 20 Ohio App. 3d 150, 20 OBR 184, 485 N.E. 2d 250.

## III

The complainant's first assignment of error challenges the court's ruling that the commission's order lacked support from reliable, probative and substantial evidence. The trial court was obliged to determine as a matter of law whether the commission's order had that support. R.C. 4112.06(E); *Plumbers & Steamfitters Commt.* v. *Ohio Civil Rights Comm.* (1981), 66 Ohio St. 2d 192, 200, 20 O.O. 3d 200, 205, 421 N.E. 2d 128, 133. The scope of review is the same as the court employs for appeals pursuant to R.C. 119.12. *Plumbers & Steamfitters Commt., supra.*

That review required the court to consider the evidence. In *Univ. of Cincinnati* v. *Conrad* (1980), 63 Ohio St. 2d 108, 111-112, 17 O.O. 3d 65, 67, 407 N.E. 2d 1265, 1267-1268, the Supreme Court explained the trial court's responsibilities:

"[T]he Court of Common Pleas must

give due deference to the administrative resolution of evidentiary conflicts. For example, when the evidence before the court consists of conflicting testimony of approximately equal weight, the court should defer to the determination of the administrative body, which, as the fact-finder, had the opportunity to observe the demeanor of the witnesses and weigh their credibility. However, the findings of the agency are by no means conclusive.

"Where the court, in its appraisal of the evidence, determines that there exist legally sufficient reasons for discrediting certain evidence relied upon by the administrative body, and necessary to its determination, the court may reverse, vacate or modify the administrative order. Thus, where a witness' testimony is internally inconsistent, or is impeached by evidence of a prior inconsistent statement, the court may properly decide that such testimony should be given no weight. Likewise, *where it appears that the administrative determination rests upon inferences improperly drawn from the evidence adduced, the court may reverse the administrative order.*" (Emphasis added.)

Ohio follows federal case law applicable to Title VII of the Civil Rights Act of 1964 in determining whether an employer has illegally discriminated against an employee. *Plumbers & Steamfitters Commt., supra,* at 196, 20 O.O. 3d at 202, 421 N.E. 2d at 131. In *McDonnell Douglas Corp.* v. *Green* (1973), 411 U.S. 792, the Supreme Court established standards and procedures for evaluating discriminatory discharge claims.

First, the complainant must establish a *prima facie* case of sex discrimination. She may do so by showing that (1) she is a female, (2) she was qualified for the position, (3) she was discharged, and (4) the position remained open or a male employee then performed those duties. See *McDonnell Douglas Corp., supra,* at

802; *Plumbers & Steamfitters Commt., supra,* at 197, 20 O.O. 3d at 203, 421 N.E. 2d at 131-132. The employer cannot reasonably contest that the complainant satisfied this burden.

Next, the employer has a burden of rebuttal which it satisfies by articulating "some legitimate, nondiscriminatory reason" for discharging the complainant. *Id.* The employer need not establish by any standard of proof that it acted for that nondiscriminatory purpose. It need only present some evidence that it acted for legitimate nondiscriminatory reasons. In this case, the employer presented evidence that it discharged the complainant because her supervisors believed that she was not performing her work satisfactorily.

Finally, the complainant must prove by a preponderance of the evidence that the employer's reasons were a pretext for its true discriminatory motives. She may prove the employer's discriminatory purpose by direct or circumstantial evidence, including discredit of the proffered nondiscriminatory reasons. *McDonnell Douglas Corp., supra,* at 804-805; *Texas Dept. of Community Affairs* v. *Burdine* (1981), 450 U.S. 248, 256.

This complainant sought to prove that the employer's reason for her discharge was pretextual by showing that a similarly situated male employee received less stringent discipline. The commission impliedly found that the employer had sufficient cause to discharge her, particularly while she had a probationary status. She does not dispute that apparent finding here. Nor does she contend that this employer regularly discriminated against women employees, and the record clearly denies such a conclusion. Rather, she contends that the employer must have considered her sex as an adverse factor because it did not discharge a male laborer with similar derelictions.

For this purpose, the tribunal should

measure the reliability of the supervisor's explanations by their subjective knowledge and beliefs when they acted. If they honestly perceived circumstances which lawfully justified their action, they did not manifest discriminatory purposes even if their perceptions were inaccurate. *Lieberman* v. *Gant* (C.A.2, 1980), 630 F.2d 60, 67; *Turner* v. *Texas Instruments, Inc.* (C.A.5, 1977), 555 F.2d 1251, 1256-1257; cf. *Logan* v. *St. Luke's Hospital Center* (S.D.N.Y. 1977), 428 F.Supp. 127. The commission apparently decided that the complainant's supervisors should not have treated the two laborers differently, based on the circumstances as the commission saw them. That decision applied the wrong legal standard to determine another person's state of mind or purpose.

The complainant's supervisors explained that they did not believe these two laborers were similarly situated or that the two had similar derelictions. They perceived that the complainant had a prolonged record of poor performance marked by complaints from other foremen and her female co-workers. The commission found that the company's general foreman told the complainant's foreman to watch her and two male laborers because "they might be 'goof-offs.' "

The commission discounted the significance of the foreman's beliefs because the complainant's earlier foreman did not report those complaints to her or note them in her personnel file. However, this foreman's honest beliefs belied any inference that he discriminated against the complainant as a woman, even if his beliefs were ill-founded. Moreover, the personnel file reports concerned specific instances, rather than general impressions. The erratic use of those reports supported the supervisors' testimony that the company had no consistent practice regarding them. Thus, the complainant's last

supervisors obviously failed to note her undisputed default that afternoon, or the male co-worker's undisputed default that morning. The supervisors' testimony also supports a finding that they had no duty to caution probationary employees, even if they sometimes did so.

The complainant's foreman testified that he perceived the male laborer as a good worker who was previously productive. The commission discounted that testimony because another foreman had cautioned this male laborer for an unexcused absence one day three weeks earlier. However, the commission found that the complainant's foreman was unaware of that incident. Additionally, the company might well view a single unexcused absence differently from prolonged poor performance.

The complainant's foreman testified that he perceived the complainant's performance that day as more objectionable than the male laborer's performance. Both were found wasting time twice that day. However, the foreman testified that the male laborer was in his own work area both times, and the commission found that he believed she was outside her work area both times. Additionally, the foreman testified that the male laborer had completed his assigned duties, but that she had made very little progress on hers. Moreover, the same foreman recommended that the company discharge another male laborer that day because he believed that this other laborer was not performing satisfactorily.

In all these circumstances, the trial court could properly conclude that "the administrative determination rests upon inferences improperly drawn from the evidence adduced." *Univ. of Cincinnati* v. *Conrad, supra.* This is not a case in which the hearing officer relied upon his impressions of the witnesses' credibility from their demeanor. Rather, the commission drew inferences from uncontra-

108

dicted testimony. It inferred a discriminatory purpose from circumstantial evidence which was equally consistent, if not more consistent, with the supervisors' nondiscriminatory explanations.

The trial court had authority to reject the commission's apparently unwarranted inferences. Therefore, we overrule the complainant's first assigned error.

## IV

The complainant's second and third assignments of error challenge specific findings by the trial court. However, the trial court made no specific findings, and no party requested it to do so. Apparently, the complainant assumes that the trial court accepted each of the employer's arguments, but we have no reason to reach that conclusion. The court had no duty to decide every issue raised by the employer. *In re Annexation of 1,544.61 Acres* (1984), 14 Ohio App. 3d 231, 14 OBR 259, 470 N.E. 2d 486.

We should not address issues which the trial court did not expressly decide. See *Mills-Jennings of Ohio, Inc.* v. *Liquor Control Comm.* (1984), 16 Ohio App. 3d 290, 293, 16 OBR 321, 324, 475 N.E. 2d 1321, 1325. Therefore, we overrule these two assigned errors and affirm the trial court's judgment.

*Judgment affirmed.*

PATTON and CORRIGAN, JJ., concur.