Rita Photinos, plaintiff-appellant, (hereinafter "Photinos") appeals from the judgment of the Cuyahoga County Court of Common Pleas, General Division, Case No. CV-332406, in which the trial court granted the summary judgment motion of the I-X Center Corporation, the Park Corporation and Frank Petrella, defendants-appellees, (hereinafter "I-X Center defendants") as to Photinos' sexual discrimination cause of action arising out of her former employment with the I-X Center as a security guard. Photinos assigns two errors for this court's review.[1] The I-X Center defendants have filed a separate appeal from the trial court's denial of their motion for sanctions pursuant to Civ.R. 11 and R.C. 2323.51. The I-X Center defendants assign a single error for this court's review.
Upon a review of the record, it is apparent that the judgment of the trial court should be affirmed.
On March 25, 1995, Rita Photinos was hired as a security guard by the I-X Center. Photinos was hired to provide security inside the building. Prior to working for the I-X Center, Photinos had been employed by a contract security company called Tenable, which had provided inside security for the I-X Center during its show season. Photinos was paid by the I-X Center at a rate of $8 per hour. She described her employment responsibilities as "turning out lights and checking doors and making sure the building is secure * * *." (T. 107-108.)
Kevin Scheiferstein, president of the I-X Center created the inside security department at the time Photinos was hired. Approximately one year later, Mr. Scheiferstein decided to eliminate the inside security position as it had not proven economically sound. By July 1996, the inside security department at the I-X Center was completely eliminated. At roughly the same time, Frank Petrella was hired as security department supervisor by the I-X Center. Petrella had previously been a security guard at the I-X Center prior to the promotion.
Consequently, Photinos was transferred to outside security. Outside security guards were stationed in the guardhouse located at the entrance to the I-X Center parking lot. The duties of outside security guards included stopping cars entering the gate, asking people where they were going, answering the telephone in the guardhouse and taking messages. There was no requirement that outside security guards receive security training or other specialized education.
On July 6, 1996, Photinos was informed that she was being temporarily placed on the swing shift for a three-week period during which time a new security guard, Larry Lucas, would be trained on Photinos' old shift. Another security guard, Jerry Iwanyckyj, was also temporarily switched to the swing shift at that time. Mr. Iwanyckyj refused the re-assignment and was subsequently terminated from his employment as a security guard at the I-X Center. Photinos expressed dissatisfaction with the shift change as well; however, she received only a warning as a result of her actions.
During her tenure as an outside security guard, Photinos' overtime was governed by a procedure established by the Director of the Security Department, Mr. David Kwiatkowski. When a security guard called in sick, the guard on duty was given the first opportunity to cover the next shift. If the security guard on duty did not want to work the overtime hours, the other security guards would be called by telephone and offered the overtime opportunity. Security guards were notified in a randomly rotating order. If no security guard could be reached, messages were left and the first security guard to notify the supervisor would receive the overtime hours. While Photinos worked as an outside security guard, she allegedly worked 16.2 hours of overtime. Photinos maintains that other male security guards were offered and accumulated substantially more overtime during the same period.
On September 6, 1996, a meeting was conducted between Photinos and Dave Kwiatkowski regarding Photinos' employment with the I-X Center. At the meeting, Mr. Kwiatkowski outlined a number of problems that had arisen during Photinos' period of employment. First, it was alleged that Photinos had gone outside the loop regarding security matters during a presidential visit in spite of repeated warnings against such behavior. Second, it was alleged that Photinos allowed non-security personnel into the guardhouse against express I-X Center policy. Third, Photinos had failed to attend a number of previously scheduled meetings. Fourth, Photinos objected to shift changes. Fifth, Photinos spent too much time at work "visiting" with other employees rather than attending to her employment responsibilities. Sixth, Photinos' negative attitude while at work was causing internal problems in the department. An example of Photinos' negative attitude occurred after she responded to instructions from Mr. Kwiatkowski relayed to her through another employee by stating "Fuck Dave." It was alleged that Photinos' attitude and work performance suffered after she had been transferred to outside security. As a result of the meeting, Photinos was terminated from her employment with the I-X Center.
On March 28, 1997, Photinos filed a complaint in the Cuyahoga County Court of Common Pleas against the I-X Center, the Park Corporation, the parent company of the I-X Center, and Frank Petrella, her former immediate supervisor. Photinos alleged that the Park Corporation was liable for the acts of the I-X Center and Frank Petrella because it, in actuality, operated the day to day business affairs of the I-X Center.
Photinos initially alleged five separate causes of action in her complaint: sexual discrimination; sexual harassment; wrongful discharge due to her sexual orientation; intentional infliction of emotional distress; and negligent infliction of emotional distress. Defendants-appellees filed an answer with affirmative defenses on May 2, 1997.
On August 21, 1997, the trial court conducted a case management conference at which the following relevant dates were established. Discovery was to be completed by December 19, 1997. Dispositive motions were to be filed by December 26, 1997 with opposing briefs due by January 26, 1998. A final pre-trial and trial date were also scheduled. Approximately five weeks after the case management conference, counsel for defendants-appellees sent a letter to Photinos' counsel in which she offered to refrain from seeking attorney fees if Photinos agreed to dismiss her case with prejudice. This offer was based upon defendants-appellees' contention that Photinos' case was wholly without merit. Photinos' counsel declined the offer and proceeded with the case.
On December 23, 1997, Photinos voluntarily dismissed her fourth and fifth causes of action with prejudice pursuant to Civ.R. 41 (A). The next day, defendants-appellees filed their motion for summary judgment. After receiving an extension of time, Photinos filed her brief in opposition to defendants-appellees' motion for summary judgment on February 9, 1998. That same day, Photinos voluntarily dismissed her second and third causes of action without prejudice pursuant to Civ.R. 41 (A). At this point, the only remaining cause of action for the trial court to consider was Photinos' first cause of action for sexual discrimination in violation of R.C. 4112.99.
On February 25, 1998, the trial court granted the I-X Center defendants' motion for summary judgment without opinion as to Photinos' remaining cause of action for sexual discrimination. On March 18, 1998, Photinos filed a timely notice of appeal from the judgment of the trial court.
On March 18, 1998, the I-X Center defendants filed a motion for sanctions pursuant to Civ.R. 11 and R.C. 2323.51. The I-X Center defendants maintained that Photinos' case was without merit. They contend that it is frivolous and has caused them to incur unnecessary costs and attorney fees while defending the action. On April 16, 1998, the trial court denied the I-X Center defendants' motion for sanctions. On May 15, 1998, the I-X Center defendants filed a timely notice of appeal from the trial court's denial of their motion for sanctions. On May 21, 1998, this court consolidated the two appeals for purpose of hearing and disposition.
Rita Photinos' first assignment of error states:
 I. THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT WITH REGARD TO PLAINTIFF'S SEXUAL DISCRIMINATION CLAIM AGAINST DEFENDANTS.
Photinos maintains, through her first assignment of error, that the trial court improperly granted summary judgment for the I-X Center defendants on her sexual discrimination claim. Specifically, Photinos argues that she clearly established a prima facie case of sex discrimination in that she was a female who was qualified for the position of security guard and was then discharged and replaced by a male security guard. Photinos maintains further that the reasons set forth by the I-X Center defendants for her termination are disputed and were a mere pretext. Photinos supports her contention through the affidavits of Jerry Iwanyckyj and Wendell Cox, two former security guards at the I-X Center, who both maintained that Frank Petrella had complained often about Photinos and expressed the desire to get Photinos terminated from her position. Petrella allegedly referred to Photinos at various times as a "dyke-bitch" and a "lezzy bitch" while discussing her with other employees of the I-X Center. Photinos states that she only learned of these derogatory comments by Petrella after she was terminated from her employment with the I-X Center.
Photinos also maintains that her inexplicable lack of overtime, as well as her shift change, are further evidence in support of her contention that the reasons given for her discharge were merely pre-textual. Photinos refers to a memorandum from Dave Kwiatkowski dated May 3, 1996, in which, she alleges, a policy was established whereby designated shifts and vacation for security personnel were to be determined on the basis of seniority. At the time of her discharge, Photinos argues that she had the most seniority of any of the guards, but was still forced to change shifts against her will.
The standard for granting a motion for summary judgment is set forth in Civ.R. 56 (C). In applying this rule, the Ohio Supreme Court has consistently held that, before such a motion can be granted, the moving party must show that: (1) there is no genuine issue of fact; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the non-moving party, that conclusion is adverse to the party against whom the motion for summary judgment is made. Mootispaw v. Eckstein (1996), 76 Ohio St.3d 383;Welco Industries, Inc. v. Applied Cas. (1993), 67 Ohio St.3d 344;Osborne v. Lyles (1992), 63 Ohio St.3d 326.
A motion for summary judgment forces the non-moving party to produce evidence on issues for which that party bears the burden of production at trial. Wing v. Anchor Media, Ltd. of Texas
(1991), 59 Ohio St.3d 108, syllabus. The non-movant must also present specific facts and may not merely rely upon the pleadings or upon unsupported allegations. Shaw v. Pollack Co. (1992),82 Ohio St.3d 656. When a party moves for summary judgment supported by evidentiary material of the type and character set forth in Civ.R. 56 (B), the opposing party has a duty to submit affidavits or other material permitted by Civ.R. 56 (C) to show that there is a genuine issue for trial. Harless v. Wihis Day WarehousingCo. (1978), 54 Ohio St.2d 64.
In Dresher v. Burt (1996), 75 Ohio St.3d 280, the Ohio Supreme Court discussed the standard to be applied when reviewing motions for summary judgment. The court stated:
 Again, we note that there is no requirement in Civ.R. 56 that any party submit affidavits to support a motion for summary judgment. See, e.g., Civ.R. 56 (A) and (B). There is a requirement, however, that a moving party, in support of a summary judgment motion, specifically point to something in the record that comports with the evidentiary materials set forth in Civ.R. 56 (C).
Id. at 298.
The court's analysis of an appeal from a summary judgment is conducted under a de novo standard of review. See Maust v. BankOne Columbus, N.A. (1992), 83 Ohio App.3d 103, 107; Howard v.Willis (1991), 77 Ohio App.3d 133. No deference is given to the decision under review, and this court applies the same test as the trial court. Bank One of Portsmouth v. Weber (Aug. 7, 1991), Scioto App. No. 1920, unreported.
Ohio has a long standing doctrine of employment at will. SeeHenkel v. Educ. Research Council (1976), 45 Ohio St.2d 249, 255,344 N.E.2d 118. Unless otherwise agreed, either party to an oral employment-at-will may terminate the employment relationship for any reason that is not contrary to law. Mers v. Dispatch PrintingCo. (1985), 19 Ohio St.3d 100, 103, 483 N.E.2d 150. However, such relationships do have defined limits, such as the prohibition against retalitory discharge for filing workers' compensation claims, union activity or discriminatory firings based upon race, sex, age or physical handicap. Id.
In Motley v. Flowers Versagi Court Reporters (Dec. 11, 1997), Cuyahoga App. No. 72069, unreported, this court re-stated the elements of a claim for sex discrimination by an employer. This court stated:
 In Republic Steel Corp. v. Hailey (1986), 30 Ohio App.3d 103, 506 N.E.2d 1215, this court set forth the standard to be applied in a case claiming discrimination by an employer. In order to establish a prima facie case of sex discrimination, a plaintiff must show (1) that she is female, (2) she was qualified for the position, (3) she was discharged, and (4) the position remained open or a male employee then performed those duties. Id., at 106, 506 N.E.2d 1215. Once a plaintiff has established a prima facie case, the burden shifts to the defendant to articulate some legitimate nondiscriminatory reason for the employee's termination. The plaintiff then must prove by a preponderance of the evidence that the defendant's reason for termination was false or pretextual.
In the case sub judice, a review of the record demonstrates that, while Photinos did set forth a prima facie case of sex discrimination, she failed to establish that the I-X Center defendants' stated reasons for her termination were false or pretextual. Clearly, Photinos was female. In addition, it is undisputed that she possessed the necessary qualifications and training for employment as a security guard at the I-X Center. She was terminated and her former position was filled by a male security guard. The I-X Center defendants maintain that Photinos was terminated for a number of work-related reasons including disregarding various security regulations, failure to attend scheduled meetings, objecting to shift changes and an overall negative attitude toward her work responsibilities beginning with her transfer to outside security after her former department had been eliminated.
Photinos has failed to offer any evidence that the I-X Center defendants' reasons for her termination were pretextual. Contrary to Photinos' assertions, she was not the only employee to have a temporary shift change imposed. In fact, Jerry Iwanyckyj, a co-worker who also had his shift temporarily changed, was terminated due to his failure to agree to the new shift. In addition, the memorandum from Dave Kwiatkowski to which Photinos refers does not establish a procedure for picking shifts based upon seniority. The memorandum merely states that security guards' vacation schedules would be determined by seniority.
Similarly, the statements attributed to Frank Petrella, while clearly objectionable, do not establish sex discrimination by the I-X Center. Photinos' actual supervisors were Dave Kwiatkowski and Kevin Scheiferstein. Photinos admitted that Mr. Kwiatkowski was the head of the department and made the employment decisions. (T. 41-42.) Photinos has failed to show that anyone in a decision-making capacity acquiesced in or ratified the alleged comments of Frank Petrella. Courts have repeatedly determined that "stray remarks" do not constitute discrimination. Cooley v.Carmike Cinemas (C.A.6, 1994), 25 F.3d 1325, 1330-1331; Motley, supra. A plaintiff must therefore demonstrate that any disputed remark was made or approved by a decision maker who held authority over employment decisions that would affect the plaintiff. EEOC v. Texas Instruments, Inc. (C.A. 5, 1996),100 F.3d 1173, 1181. See, also, Madera, et al. v. Satellite Shelters,Inc., et al. (Aug. 12, 1998), Cuyahoga App. No. 73172, unreported, at page 18. Photinos has failed to offer any proof in this regard.
For the foregoing reasons, Photinos has not met her burden to withstand a motion for summary judgment on a claim for sex discrimination. Accordingly, the trial court did not err by entering summary judgment on this claim.
Rita Photinos' first assignment of error is not well taken.
Rita Photinos' second assignment of error states:
 II. THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT WITH REGARD TO DEFENDANT PARK CORPORATION'S DEFENSE THAT IT IS NOT A PROPER PARTY.
Rita Photinos argues, through her second assignment of error, that the trial court erred in entering summary judgment in favor of the Park Corporation. It is Photinos' position that the Park Corporation and the I-X Center should have been considered joint employers of Photinos under the integrated enterprise standard. Photinos maintains that the Park Corporation is interrelated to the I-X Center to such a degree that they are, in essence, the same entity rather that a parent corporation and a wholly owned subsidiary.
In light of this court's disposition of Photinos' first assignment of error, her remaining assignment of error is rendered moot pursuant to App.R. 12 (A) (1) (c). Where there is no liability as to the subsidiary, the parent corporation will not be held liable. See Jones v. White Motor Corp. (1978),61 Ohio App.2d 162, 401 N.E.2d 223, 15 O.O.3d 292; Clegg v. QuartoMining Company (April 5, 1989), Monroe App. No. 638, unreported.
Even if this court were to consider Photinos' second assignment of error, a review of the relationship between the Park Corporation and the I-X Center fails to support Photinos' argument in this instance. There is no evidence in support of Photinos' contention that the Park Corporation and the I-X Center should be held jointly responsible for the acts of the immediate employer, the I-X Center. The Park Corporation does not conduct interrelated operations with the I-X Center; there is no common management of day to day operations between the two corporations; and there is no centralized control of labor relations since the Park Corporation has no control over hiring and/or firing of I-X Center employees. See Clegg, supra. Accordingly, the trial court did not err by granting summary judgment in this regard.
Photinos' second assignment of error is not well taken.
The I-X Center defendants' sole assignment of error states:
 I. THE TRIAL COURT ERRED IN SUMMARILY DENYING DEFENDANTS' MOTION FOR SANCTIONS UNDER RULE 11 OF THE OHIO RULES OF CIVIL PROCEDURE AND O.R.C. 2323.51.
The I-X Center defendants argue, through their sole assignment of error, that the trial court improperly overruled their motion for sanctions pursuant to Civ.R. 11 and R.C. 2323.51. Specifically, the I-X Center defendants maintain that three out of the five original causes of action brought by Photinos, i.e. sexual preference discrimination, sexual preference harassment and negligent infliction of emotional distress, are wholly unsupported by existing Ohio law regardless of whether the facts alleged by Photinos in her complaint were accurate. Photinos then allegedly admitted during her deposition that the facts necessary to support the remaining causes of action, i.e. sexual discrimination and intentional infliction of emotional distress, were not present. Finally, Photinos continued to prosecute all five causes of action after her deposition, despite having the legal deficiencies of her case outlined, forcing the I-X Center defendants to incur additional and unnecessary attorney fees and expenses through and including the filing of their summary judgment motion.
The review of a decision to award or deny sanctions pursuant to Civ.R. 11 requires the application of an abuse of discretion standard. State, ex rel. Fant, v. Sykes (1987), 29 Ohio St.3d 65,505 N.E.2d 966. Under this rule, a trial court may award a party attorney fees and legal expenses if an opposing attorney filed a pleading for which the attorney lacked knowledge, information and belief that it is supported by good ground. Jaberg v.Kayeline Co., (July 30, 1998), Cuyahoga App. Nos. 73169, 73392, unreported. The violation must be willful and not merely negligent. Ceol v. Zion Indus., Inc. (1992), 81 Ohio App.3d 286,610 N.E.2d 1076.
Similarly, a court may award reasonable attorney fees to any party to a civil action who is adversely affected by another party's frivolous conduct. R.C. 2323.51 (B) (1). Conduct is defined as the "filing of a civil action, asserting a claim, defense, or other position in connection with a civil action, or taking any other action in connection with a civil action." R.C.2323.51 (A) (1). Frivolous conduct, as defined in R.C. 2323.51
(A) (2), is the conduct of a party to a civil action or his or her counsel which satisfies either of the following:
 (a) It obviously serves merely to harass or maliciously injure another party to the civil action;
 (b) It is not warranted under existing law and cannot be supported by a good faith argument for an extension, modification, or reversal of existing law.
The wording of R.C. 2323.51 is permissive. See Jaberg, supra.
The decision as to whether to impose sanctions pursuant to the statute rests within the sound discretion of the trial court and will not be reversed on appeal absent an abuse of that discretion. Riley v. Langer (1994), 95 Ohio App.3d 151,642 N.E.2d 1. An abuse of discretion connotes more than an error of law or judgment, it implies that the attitude of the trial court was unreasonable, arbitrary or unconscionable. Shaffer v. Meese
(1991), 66 Ohio App.3d 400, 584 N.E.2d 77. The trial court's discretion is broad because it has the opportunity to view all of the proceedings and to make factual findings regarding frivolity based upon first-hand knowledge. Ceol, supra.
In the case herein, a review of the record demonstrates that the trial court did not err by denying the I-X Center defendants' motion for sanctions. While it is true that Photinos initially alleged five causes of action, given the appellate standard of review on such a motion, this court cannot now say that the trial court abused its discretion by denying the motion for sanctions brought by the I-X Center defendants.
The I-X Center defendants' sole assignment of error is not well taken.
Judgment of the trial court is hereby affirmed in all respects.
It is ordered that defendants-appellees/cross-appellants recover of plaintiff-appellant/cross-appellee their costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Appellate Procedure.
 ___________________________________ MICHAEL J. CORRIGAN JUDGE
 KARPINSKI, P.J., and ROCCO, J., CONCUR.
N.B. This entry is an announcement of the court's decision. See App.R. 22 (B), 22 (D) and 26 (A); Loc.App.R. 22. This decision will be journalized and will become the judgment and order of the court pursuant to App.R. 22 (E) unless a motion for reconsideration with supporting brief, per App.R. 26 (A), is filed within ten (10) days of the announcement of the court's decision. The time period for review by the Supreme Court of Ohio shall begin to run upon the journalization of this court's announcement of decision by the clerk per App.R. 22 (E). See, also, S. Ct. Prac. R. II, Section 2 (A) (1).
[1] Photinos did not pursue her claims against Frank Petrella, as an individual, on appeal. Accordingly, all such claims have been abandoned and will not be addressed by this court. SeeParahoo v. Mancini (April 14, 1998), Franklin App. No. 97 APE08-1071.