DeAmiches et al., Appellees, *v.* Popczun, Appellant.

[Cite as DeAmiches v. Popczun (1973), 35 Ohio St. 2d 180.]

(No. 72-692—Decided July 11, 1973.)

182

*Messrs. Payer, Bleiweiss & Crow* and *Mr. Eugene Blei-weiss,* for appellees.

*Messrs. Arter & Hadden* and *Mr. Harry T. Quick,* for appellant.

CELEBREZZE, J.   The ultimate question for resolution in this case is whether the trial court acted properly in granting defendant's motion for judgment at the close of the plaintiffs' opening statement.

Both the pleadings and the opening statement disclose the condition of the driveway, at the time in question, as being icy and covered with snow.  They also carefully set forth the proposition that the cause of the injuries sustained by the plaintiff was the attempt on her part to go around a hole in the concrete driveway.

The remarks of plaintiffs' counsel in his opening statement are as follows:

"* * * She [Mrs. DeAmiches] walked down the driveway and she was aware of the presence of the snow.  You couldn't help but see snow there, and she was proceeding with due caution and she walked reasonably close to that building or house so that if necessary, she could brace herself against it, as she walked.

"When she reached a point near where the hole was,

the hole was covered up with snow at this time, she nevertheless, being aware where that hole was, intended to go around the hole and avoid it, and that was her intention, and she proceeded carefully to do so and she went a little wider as she approached the area where the hole was.

"She testified that she was intending to go eight inches or more to the outside of that hole, but as she was doing so and before she reached that point, she put her left foot down and she was wearing women's boots—in other words, the kind where they wear no shoes underneath them, one of those boots with a relatively low heel, a low or medium type heel, and as she put her left foot down, there apparently was an icy condition under the snow and her left foot went out from under her and went towards the hole.

"The toe did not get caught, but the heel went into the hole and that threw her off balance. Up to that time, even though her foot was slipping, she had balance. The thing that caused her to lose her balance was the hole and not the slip. * * *"

Those statements can hardly be interpreted in any way other than an acknowledgement of the plaintiff's realization of the imminently dangerous situation. The accepted basis of liability in such a circumstance is usually held to be the landlord's superior knowledge of the existing danger or perils. When such perilous conditions are known to the landlord, and are not known to the person injured, then liability may be established and recovery permitted. See *Englehardt* v. *Philipps* (1939), 136 Ohio St. 73.

Schneider, J., citing *Debie* v. *Cochran* (1967), 11 Ohio St. 2d 38, stated the rule clearly and concisely in *Mikula* v. *Slavin Tailors* (1970), 24 Ohio St. 2d 48, at page 56, as follows:

"We bottomed that rule of non-liability of the property owner for the condition of his premises upon his lack of imputed superior knowledge of that condition. To the extent that a business invitee and the owner of the premises have equal knowledge of the usual dangers resulting solely from

natural accumulations of ice and snow, the latter cannot be charged with actionable negligence with regard to such dangers."

In Prosser, Law of Torts (3 Ed.), 403, it is stated: "* * * in the usual case, there is no obligation to protect the invitee against dangers which are known to him, or which are so obvious and apparent to him that he may reasonably be expected to discover them. Against such conditions it may normally be expected that the visitor will protect himself. * * *"

See, also, 2 Harper & James, The Law of Torts 1491, the following:

"* * * The knowledge of the condition removes the sting of unreasonableness from any danger that lies in it, and obviousness may be relied on to supply knowledge. Hence the obvious character of the condition is incompatible with negligence in maintaining it. If plaintiff happens to be hurt by the condition, he is barred from recovery by lack of defendant's negligence towards him, no matter how careful plaintiff himself may have been. * * *"

The foregoing authorities clearly remove any trace of liability on the part of the defendant concerning the natural accumulation of ice and snow. And it would appear further, from the comments of counsel for the plaintiffs, that there was a little doubt in his client's mind at the time of either the existence of the defective condition of the driveway or the precise location of the defect. That brings us to a consideration of the conduct of the plaintiff at the time "she put her left foot down * * * and went towards the hole."

The following statement appears in 2 Restatement of the Law, Torts 2d 569, Section 496 C:

"(1) Except as stated in Subsection (2), a *plaintiff who fully understands a risk of harm to himself* or his things *caused by the defendant's conduct or by the condition of the defendant's land* or chattels, *and who nevertheless voluntarily chooses to enter* or remain, or to permit his things to enter or remain *within the area of that risk, under circumstances that manifest his willingness to ac-*

*cept it, is not entitled to recover for harm within that risk.''* (Emphasis added.)

Succinctly stated, the record herein conclusively establishes a fact pattern which fully meets the criteria described in the restatement. Although plaintiff attempts to ascribe the full risk of harm to the defendant's continuing neglect, she, with a full and complete knowledge of the risk, elected to expose herself to it, overtly expressing a willingness to accept it and the chance of harm.

Duncan, J., in *Briere* v. *Lathrop Co.* (1970), 22 Ohio St. 2d 166, 174, stated:

"* * * Assumption of the risk requires three elements: One must have full knowledge of a condition; such condition must be patently dangerous to him; and he must voluntarily expose himself to the hazard created. * * *''

In this case, both the trial court and the dissenting opinion in the Court of Appeals include in their findings not only the conclusive establishment of "assumption of the risk" but also the doctrine of "contributory negligence.''

In *Masters* v. *New York Central Rd. Co.* (1947), 147 Ohio St. 293, 301, Judge Hart, citing numerous cases, made the following observation:

"Incidentally, 'there are situations where the defenses of assumption of risk and contributory negligence will overlap. The plaintiff's conduct in accepting the risk may itself be unreasonable, because the danger is out of all proportion to the interest which he is seeking to advance * * *. In all such cases, both defenses are available to the defendant. * * * In working out the distinction, the courts have arrived at the conclusion that assumption of risk is a matter of knowledge of the danger and intelligent acquiescence in it, and that to the extent that this can be found recovery will be denied; while contributory negligence is a matter of some fault or departure from the standard of reasonable conduct, however unwilling or protesting the plaintiff may be. * * *''

In *Dunn* v. *Higgins* (1968), 14 Ohio St. 2d 239, this court makes the following distinction:

"The terms, 'contributory negligence' and 'assumption

of risk,' are not synonymous. The former is based on carelessness and the latter on venturousness. (Paragraph one of the syllabus of *Porter* v. *Toledo Terminal Rd. Co.*, 152 Ohio St. 463, approved and followed.)''

As this writer views the difference between the two terms, ''assumption of the risk'' is based upon the voluntary consent of the plaintiff to meet the risk and take her chances, while ''contributory negligence'' is founded upon the failure of a plaintiff to exercise the care of a reasonable man for his own protection. Obviously, there are situations that satisfy both meanings, so that, although they may overlap they are neither inclusive nor exclusive. To the former it would be logical to apply the subjective test or standard, while the latter doctrine is usually tested by the objective method.

We conclude that the record clearly indicates that the plaintiff knowingly and deliberately assumed the risk by the path she chose on the morning in question. She was admittedly cognizant of the hazard, and at that given moment her knowledge was superior to that of the defendant. Her voluntary exposure to the hazard relieved the defendant of any legal responsibility towards her.

We find that, under the circumstances of this case, there is no conclusion that reasonable minds could reach other than that which was made by the trial court.

Accordingly, the judgment of the Court of Appeals is reversed.

*Judgment reversed.*

O'NEILL, C. J., HERBERT, CORRIGAN, STERN, W. BROWN and P. BROWN, JJ., concur.