842 F.2d 893
 6 UCC Rep.Serv.2d 56, Prod.Liab.Rep.(CCH)P 11,730
Phillip E. SHAFFER, et al., Plaintiffs-Appellants,
v.
AMF, INCORPORATED, et al., Defendants-Appellees.
 No. 86-3226.
 United States Court of Appeals,
Sixth Circuit.
 Argued March 20, 1987.
Decided March 24, 1988.
 
 Thomas Mester, Dean Nieding, Joel Levin (argued), Nurenberg, Plevin, Heller & McCarthy, Co., L.P.A., Cleveland, Ohio, for plaintiffs-appellants.
 Forrest A. Norman, Gallagher, Sharp, Fulton & Norman, Cleveland, Ohio, Joseph W. Pappalardo (argued), for defendants-appellees.
 Before KRUPANSKY and BOGGS, Circuit Judges, and EDWARDS, Senior Circuit Judge.
 BOGGS, Circuit Judge.
 
 
 1
 On May 1, 1981, Phillip Shaffer was lawfully riding his motorcycle to work at 8:00 a.m., traveling at 25 mph in the curb lane. He was going through an intersection with the light in his favor, when an automobile, which Shaffer did not see, entered the intersection and made a left turn into the path of the motorcycle, striking Shaffer broadside. The next event that Shaffer remembered was waking up from a coma in the hospital. He has suffered continuous physical and mental impairment since then.
 
 
 2
 Shaffer and his wife, Teresa, (hereinafter "Shaffer") sued the motorcycle manufacturer, alleging that (1) it was negligent in failing to warn of the hazards of riding a motorcycle, and Shaffer did not consent to these hazards, (2) it was strictly liable in tort for selling an unreasonably dangerous defective product, because of the failure to warn, and (3) the manufacturer breached express and implied warranties of merchantability and fitness for purpose. Later, he amended the complaint to claim strict liability in tort because of misleading advertising.
 
 
 3
 The defendant manufacturer moved for summary judgment on the ground that the danger from motorcycle riding was open and obvious, as a matter of law, and that under Ohio law the plaintiff did not state a claim. The district court granted summary judgment for the defendant. We believe the district court correctly found that Ohio law regards the condition and danger of the motorcycle Shaffer rode as open and obvious in the circumstances of this case. We therefore affirm the judgment.
 
 
 4
 * Viewing the evidence in the light most favorable to Shaffer, the following facts are not contested. At the time of the accident, Shaffer was driving a Harley-Davidson Sportster model, which is manufactured by the appellee's subsidiary, Harley-Davidson ("manufacturer," "Harley-Davidson" and "appellee" will be used interchangeably in this opinion). Shaffer purchased the motorcycle in new condition from a dealer some three years previously. Prior to the purchase of the Sportster, he owned a Triumph Bonneville motorcycle, which he purchased in used condition through a newspaper advertisement. At the time of the accident, Shaffer had been driving motorcycles for six years.
 
 
 5
 The owner's manual, which was introduced into evidence at the deposition, showed by check marks that Shaffer had done the scheduled routine maintenance. Shaffer admitted performing these routines himself. Whether Shaffer performed all of the scheduled services is a matter of conjecture; the attorney for appellee stopped this line of questioning when Shaffer testified that it was an American-made motorcycle that did not need much maintenance. Shaffer testified to general familiarity with the content of the owner's manual, which he kept with the motorcycle in preparedness for repairs. There are safety warnings in the owner's manual that Shaffer must have read, which were discussed in the deposition of Mark Tuttle, the Chief Engineer for Harley-Davidson.
 
 
 6
 Tuttle testified to the presence of a significant number of labels pertaining to emissions legality, battery strength, engine maintenance, and a host of performance details. These labels were placed on the motorcycle. Because of text necessary to explain the concepts, warnings concerning riding safety, operation of a motorcycle safely in traffic, and other hazards were placed in the owner's manual.
 
 
 7
 Tuttle admitted to Harley-Davidson's membership in the Motorcycle Safety Foundation. Shaffer contends that this group and others possess information relating to the various safety risks associated with riding a motorcycle, and that Harley-Davidson had the duty to disclose these specific risks. Shaffer said in his complaint that he was unaware that accidents of his type are "highly common ... regardless of how much care is exercised by the user." The strict liability theory of Shaffer's complaint is that failure to warn of these risks known to the trade groups and unknown to Shaffer made the motorcycle defectively designed and unreasonably dangerous.
 
 
 8
 Furthermore, Shaffer alleged negligent design of the motorcycle and breach of implied and express warranties. However, except for allegations of misleading advertisements in "Playboy" and "Cycle" magazines, Shaffer introduced no evidence of any warranties or design defects. The advertisements did not include promises or the basis of the bargain, but were merely statements such as "when you're on it, there's nothing bigger," "more than an incredible show of power," and "that's the kind of ready-when-you-need-it benefit that's vital in the real world of Peterbilts, Greyhounds and station wagon drivers who 'just don't see you.' "
 
 
 9
 According to Shaffer's briefs filed with this court, Harley-Davidson "was aware of" a number of safety-related publications because of its membership in the Motorcycle Safety Foundation and its association with other trade organizations. The authors of these publications and their titles are (1) the Motorcycle Safety Foundation annual report of 1980, (2) the Department of Transportation publication entitled the "Motorcycle Accident Cause Factors in Identifications of Countermeasures," published in January 1981, (3) the Department of Transportation report entitled "Effect of Motorcycle Helmet Usage on Head Injuries, and Effect of Usage Laws on Helmet Wearing Rates," published in March 1981, (4) the Motorcycle Safety Foundation publication "A Summary Report: Analysis of Motorcycle Accident Reports and Statistics," published in 1979, and (5) the National Motor Vehicle Safety Advisory Council publication of "Proceedings of the International Congress on Automotive Safety," (Second), Volume I, Part II, Motorcycle Safety (July 1973). In response to the motion for summary judgment, Shaffer stressed the absence of any warning from the motorcycle manufacturer that incorporated information from these reports.
 
 
 10
 Tuttle never admitted that all of the aforesaid reports were well known to Harley-Davidson; he merely said that they were probably known. At least with respect to Motorcycle Safety Foundation reports, Tuttle admitted that Harley-Davidson was on the distribution list for them. Tuttle admitted that Harley-Davidson would have been aware of government publications in the normal course of business. The only other connection between Harley-Davidson and the trade organizations is that Charles Thompson served on the board of Harley-Davidson and the Motorcycle Safety Foundation in the time period surrounding the accident.
 
 
 11
 Shaffer responded to the motion for summary judgment by arguing that danger is only obvious when the full extent of the danger is known, that Harley-Davidson is strictly liable for product misrepresentation, that the product was defective without the warnings, and that Harley-Davidson is liable for breach of express and implied warranties. Shaffer's affidavit in opposition to the motion stated that he had read advertisements which appeared in "Playboy" and "Cycle" magazines in 1975 through 1980, and that these advertisements induced him to buy the motorcycle. Shaffer presented the affidavit of an advertising executive (not in the motorcycle field), who opined that the advertising was "convincing the reader that he is omnipotent and invisible when riding a Harley-Davidson motorcycle." Attached to the affidavit were two advertising examples, neither of which involved the model Shaffer was riding at the time of the accident. Shaffer also relied upon the affidavit of a licensed psychologist and lecturer in safety, Robert Cunitz, who read and analyzed various Department of Transportation reports and Motorcycle Safety Foundation statistical information regarding motorcycle safety. Some of these reports were the subject of questions directed to Tuttle in his deposition.
 
 
 12
 Cunitz's affidavit identified the specific unwarned risks that Shaffer relied upon in opposition to the summary judgment motion. These risks include: (1) the failure of other motorists to detect and recognize motorcycles is the cause of most serious motorcycle and automobile collisions; (2) violation of the motorcyclist's right of way by other vehicles is the major cause of most motorcycle accidents; (3) the motorcycle inconspicuousness problem on public highways is serious; (4) there are many motorcycle fatalities, and motorcycle accidents lead to very serious injuries; (5) motorcycles are involved in a disproportionately high percentage of serious accidents; (6) helmets, and visible jackets worn in the day time, reduce the risk of injury; (7) the most common accident is the case of the other driver turning left in front of the motorcyclist; and (8) the death rate is absolutely and comparatively higher for motorcycles than for any other motor vehicle. Shaffer also cited Tuttle's admission of immediate corporate knowledge of the publication of motorcycle accident information in the Motorcycle Safety Foundation Report, published in 1979. Finally, Shaffer also cited the fact from the Motorcycle Safety Foundation Report that 93% of motorcycle accidents at public way intersections occur because of the fault of the other driver.
 
 II
 
 13
 We must answer two questions: (1) whether, in the face of all the evidence that Shaffer presented to show that the risk of motorcycle riding to him was great, the danger was nevertheless open and obvious and, therefore, Harley-Davidson had no duty to warn; and (2) whether the open and obvious rule applies to defeat Shaffer's theories of liability other than negligent failure to warn and strict liability. We hold that the answer to both questions is yes. We consider the questions seriatim.
 
 
 14
 Shaffer's negligent failure to warn and strict liability arguments concentrate on the specific risks identified in Cunitz's affidavit that might have been the cause of the damage in this case, such as the failure to wear a helmet or bright colors, the dangerous behavior of automobile drivers at intersections, the motorcycle's lack of visibility, and the magnitude of the risk. Most, if not all, of these dangers seem to relate to the results of studies published by the Motorcycle Safety Foundation and the Department of Transportation. Tuttle admitted that the studies of the Motorcycle Safety Foundation were distributed to Harley-Davidson on a continuous basis. Tuttle also admitted that "in the normal course" Harley-Davidson would have been aware of governmental reports. Construing the factual matter in the pleadings liberally, which we must do in reviewing a summary judgment motion, we will assume that Harley-Davidson had access to the information published by the Motorcycle Safety Foundation and the Department of Transportation within a reasonable time prior to the accident.
 
 
 15
 Shaffer totally failed to explain the connection between the failure to warn of the precise dangers that resulted in the accident and the studies published after the purchase of the motorcycle, which were cited in his briefs. In particular, he failed to explain how studies published in 1981 could be relevant to a claim of failure to warn with respect to a motorcycle purchased in 1980 and wrecked in May 1981. Shaffer's briefs do not separate the material taken from the Motorcycle Safety Foundation reports and Department of Transportation reports for the period before 1981 from the material taken from other trade organization reports and Department of Transportation reports after 1980.[1] An abundance of caution requires us to consider that Rule 56(e), Fed.R.Civ.P., restricts our review for a "genuine issue of material fact" to the averments of Cunitz's affidavit that are recited in Shaffer's brief filed with this court. See First National Bank of Arizona v. Cities Service Co., 391 U.S. 253, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968).
 
 
 16
 Although cases granting summary judgment to the defendant in product liability actions based upon the open and obvious danger rule are not abundant, they do exist in both federal and state jurisdictions. See, e.g., Garnes v. Gulf & Western Manufacturing Co., 789 F.2d 637 (8th Cir.1986); Bridgewater v. Economy Engineering Co., 486 N.E.2d 484 (Ind.1985); Brown v. Sears, Roebuck & Co., 136 Ariz. 556, 667 P.2d 750 (App.1983); Morgan v. Bethlehem Steel Corp., 135 Ill.App.3d 242, 90 Ill.Dec. 36, 481 N.E.2d 836 (1985).
 
 
 17
 We see no reason for the district court to have withheld summary judgment based upon the application of the open and obvious danger rule in this case. Appellant has had extensive discovery with respect to all aspects of his case, including marketing techniques and testing and inspection procedures. The open and obvious danger rule is well established in tort law, embodied in Restatement (Second) of Torts Sec. 388(b) (1965), and comment k. A supplier of chattels for the use of others is liable for failure to warn if the supplier "has no reason to believe that [users] will realize its dangerous condition." Comment k specifically notes that "[i]t is not necessary ... to inform [users] of a condition which a mere casual looking over will disclose...." It has been said that without the rule, a "manufacturer could not design and sell a pocket knife, axe, planer or gun." Plante v. Hobart Corp., 771 F.2d 617, 620 (1st Cir.1985) (and cases quoted therein).
 
 
 18
 The motorcycle is controlled by the same principle as the pocket knife or axe. Just as the common person knows to be careful of the blade of the knife or axe, the common motorcyclist knows to be cautious in using the motorcycle because of its dangers. A "casual looking over" of a motorcycle, let alone the experience of six years of riding, must reveal that a motorcycle offers no protection in an accident, that serious accidents can and do occur, and that there are risks of collisions with other vehicles.
 
 
 19
 We have previously applied the rule in a tort case arising under Ohio law within our diversity jurisdiction. Briney v. Sears, Roebuck & Co., 782 F.2d 585 (6th Cir.1986). In that case, a user deliberately took the protective guard off a table saw, in order to allow the making of a difficult cut with the saw. The court upheld a directed verdict against a cause of action for strict liability for failure to warn of the dangerousness of the saw. After removal of the guard, the dangerousness of the unguarded blade was open and obvious. As the court noted, "the obviousness of the danger is a factor to be considered in determining whether a plaintiff voluntarily ... encountered a known danger.... Miller v. Utica Mill Specialty Machinery Co., 731 F.2d 305, 308 (6th Cir.1984)." Id. at 590. There is no duty to warn of dangers that are known and encountered voluntarily. Id. at 590-91. The court did uphold a theory of liability based on negligent design, because the saw was so constructed that it was quite likely that users would be motivated to remove the protective guard in order to accomplish certain tasks. That was a specific physical design defect, for which the manufacturer could be held liable in Ohio. Here, there was nothing about the design of the motorcycle that encouraged any dangerous actions on the part of Shaffer or any user.
 
 
 20
 Under Ohio law, once it is determined that the defense applies, the only exception to its application is the unequal availability of information regarding the danger. See Mikula v. Tailors, 24 Ohio St.2d 48, 263 N.E.2d 316, 322 (1970); see also Debie v. Cochran Pharmacy-Berwick Inc., 11 Ohio St.2d 38, 227 N.E.2d 603 (1967). In Mikula, the Supreme Court of Ohio declared that accumulations of snow and ice are not obvious dangers when the ultimate cause of the injury is a hole in the sidewalk concealed underneath the snow and ice.
 
 
 21
 It is conceivable that the many obvious dangers of a motorcycle could have concealed a design defect, but Shaffer neither alleged such concealment nor do we think that he could prove it, as discovery has been exhausted. Instead, the essence of Shaffer's complaint is that although the dangers of riding a motorcycle are open and obvious and he was an experienced rider, he was unaware of certain facts surrounding the possible agencies of harm and he should have been warned.
 
 
 22
 It is important to emphasize that Shaffer does not allege that a physical defect in the motorcycle led to an unexpected type of injury. This is not a case where, for example, acid leaked from the cycle and unexpectedly damaged a leg, or the handlebars fell off, unexpectedly causing an accident. What happened here is a garden-variety collision in which an automobile, apparently wholly at fault, collided with the motorcycle. The allegedly concealed relevant information related to specific information on the means, likelihood and consequences of accidents, such as the fact that a disproportionately large number of accidents occur when cars turn left and fail to notice a motorcycle crossing the path.[2] However, this information does not reveal any defects in the motorcycle, any dangerous conditions, or any specific danger against which the company had a duty to warn. Presumably, accidents are also more likely on certain days of the week, certain times of day, certain weather conditions, and on certain types of roads. It may be that particular types of automobiles are more likely to collide with motorcycles and that drivers of a particular age, gender, or physical appearance are more likely to do so. But there is no requirement in the law that each of these hypotheticals be conveyed to motorcycle riders.
 
 
 23
 The danger which is "open and obvious" is that a motorcycle is a light-weight, non-enclosed vehicle offering no protection in the event of collision. The motorcycle's combination of the thrill of the open passenger compartment and the response of the powerful engine in a lightweight frame, which is unique among motorized transportation, is the essence of the motorcycle's dangers. Since there was no defect in the condition of the motorcycle that made this accident, or any accident, more likely than it would have been with any other motorcycle, the danger posed by the motorcycle riding was indeed open and obvious. Only the exact agent of that danger in this case was unknown to Shaffer, though the danger from automobiles generally was obvious. There was thus no duty to provide the warnings suggested by Shaffer, and summary judgment was properly granted.
 
 
 24
 State court cases also indicate that defendant has no liability for failure to warn of open and obvious dangers. In DeAmiches v. Popczun, 35 Ohio St.2d 180, 299 N.E.2d 265 (1973), the Supreme Court of Ohio upheld the denial of recovery to a tort plaintiff who was injured when she was trying to avoid placing her foot in a hole in the sidewalk, and the ice and snow in the spot where she placed her foot caused her to lose her balance and fall on her back with great force. The dangers of ice and snow were "so obvious and apparent to [her] that [she] may reasonably be expected to discover them." 229 N.E.2d at 267 (quoting Prosser, Law of Torts (3d ed.) 403). The court went on to say that "obviousness may be relied on to supply knowledge.... [T]he obvious character of the condition is incompatible with negligence in maintaining it." Ibid. (quoting 2 Harper and James, The Law of Torts 1491). Here, too, the obviousness of the condition "supplies knowledge" which is also "incompatible with negligence in maintaining it."
 
 
 25
 Shaffer argues that Jones v. White Motor Corp., 61 Ohio App.2d 162, 401 N.E.2d 223 (1978), holds that the open and obvious rule does not apply to a theory of strict liability for failure to warn. However, that case actually involved a specific design defect in a large hauling vehicle. The equipment was designed so that there was a blind spot where the equipment operator could not see ahead. The equipment advanced, and plaintiff, standing in the blind spot, was crushed. To a passing pedestrian, this defect was certainly not obvious, even if the general necessity to be cautious around large vehicles was obvious. The appellate court in Jones specifically noted that it remained good law in Ohio, consistent with DeAmiches, supra, that the obviousness of any defect is a factor in considering whether the equipment so designed was unreasonably dangerous. 401 N.E.2d at 233.
 
 
 26
 There was no defect in the motorcycle beyond the fact of its being a motorcycle, with its attendant hazards. This court is not prepared to rule that all motorcycles are inherently products that are unreasonably dangerous, so as to bring all riders within a strict liability theory. The failure to detail all of the items Shaffer contends should have been explained to him added nothing to the dangers of the motorcycle, and did not constitute an independent design defect in the motorcycle.
 
 III
 
 27
 Shaffer's other theories of breach of express and implied warranties, and strict liability because of advertising misrepresentation were also properly dismissed. Any express or implied warranty of merchantability or fitness for purpose did not disclaim all possibility of accidents to riders. Shaffer points to no case or theory so holding, in the absence of a particular design defect making the product unreasonably dangerous relative to other objects in its class. Thus, in Leichtamer v. American Motors Corp., 67 Ohio St.2d 456, 424 N.E.2d 568 (1981), the Supreme Court of Ohio stated that a product was unreasonably dangerous, "analogous to the commercial law warranty of fitness and merchantability" if "it is more dangerous in use than the ordinary consumer would expect." 424 N.E.2d at 576.
 
 
 28
 In our case, the motorcycle was certainly no more dangerous than the ordinary consumer would expect. At some places, Shaffer appears to suggest that he was of an uncommonly sensitive temperament, despite his six years of riding experience, contending that he would not have ridden had he known of all the ways that accidents could occur and the horrendous consequences of such accidents. Even these statements do not suffice to raise an issue as to a material fact. Even if believed, the statements would take Shaffer far out of the realm of the "ordinary consumer" whose expectations govern the duty to warn against obvious dangers.
 
 
 29
 Finally, the advertisements, even assuming that they applied to the model purchased by Shaffer, which they did not, raise no genuine issue as to whether they misrepresented to Shaffer that he would be "omnipotent and invisible" while riding. Shaffer admitted in his deposition that he knew a car could strike and injure a motorcyclist, even if the motorcyclist used care. Simple assertion, even by declared experts, cannot raise a genuine issue based on advertisement interpretation so divorced from reality.
 
 
 30
 We AFFIRM the judgment of the district court.
 
 
 31
 GEORGE CLIFTON EDWARDS, Jr., Senior Circuit Judge, concurring specially.
 
 
 32
 I concur in the result reached by my colleagues. However, I regard this appeal as frivolous and basically an example of imaginative pleading.
 
 
 
 [1]
 Cunitz apparently restricted himself to the first category of permissible reports plus Department of Transportation reports published in 1981
 
 
 [2]
 Plaintiff's expert provided a 17-paragraph list of warnings that should have been provided, preferably on the vehicle itself. These include the total death toll from motorcycle accidents, the organs usually damaged in accidents, the best color clothing to wear, and average repair and medical costs from an accident