Larry P. McWILLIAMS, Jr.; Larry P. McWilliams, Sr., Appellants,

v.

YAMAHA MOTOR CORPORATION, U.S.A., a California Corporation; and D.T. Van Sice, Inc., a Delaware Corporation, Defendants/Third–Party Plaintiffs,

v.

Albert A. FEISE, Third–Party Defendant.

No. 91–6024.

United States Court of Appeals, Third Circuit.

Argued July 16, 1992.

Decided March 5, 1993.

Paul R. Melletz, Cherry Hill, N.J., Ronald
B. Grayzel (argued), Levinson Axelrod
Wheaton & Grayzel, Edison, N.J., for appellants.

Robert J. Kelly (argued), Joseph A. Gallo, Wilson, Elser, Moskowitz, Edelman &
Dicker, Newark, N.J., for appellees.

Before: SCIRICA, ROTH and
HIGGINBOTHAM, Circuit Judges.

## OPINION

ROTH, Circuit Judge.

Appellants, Larry P. McWilliams, Jr., and
Larry P. McWilliams, Sr., brought a diversity action against Yamaha Motor Corporation, U.S.A. (Yamaha) and D.T. Van Sice,
Inc., claiming that the 1982 Yamaha Virago
920 motorcycle, which Larry P. McWilliams, Jr., (McWilliams) had bought from
Yamaha distributor, D.T. Van Sice, Inc.,
was improperly designed and unreasonably
dangerous. Appellants alleged in their
Complaint that Yamaha could have mitigated lower limb damages by an effective and
feasible design, known as crash bars. Appellants claim that, because there was not a
heavy duty crash bar on the Yamaha Virago 920, that model was of a defective design. Appellants further allege that appellees were negligent due to their failure to
give warnings regarding the unsafe conditions arising from the lack of a crash bar.
Appellants assert that appellees are strictly
liable. Appellee Yamaha moved for summary judgment on the ground that no basis
for strict liability existed under New Jersey
law because the risk of leg injury while
operating a motorcycle is an open and obvious risk to the ordinary consumer or is a
known danger. On November 20, 1991, the
district court entered summary judgement
in Yamaha's favor, dismissing the complaint in its entirety. By stipulation of
counsel, this ruling also applied to all
claims against defendant, D.T. Van Sice,
Inc.

The accident underlying this litigation occurred on May 31, 1987, when McWilliams
was operating his motorcycle eastbound on
Route 625 in New Jersey. Albert Feise
was parked in his automobile on the eastbound side of Route 625. Feise attempted
to make a U-turn and in the process struck
McWilliams and his motorcycle.[1] The front
bumper of Feise's car hit McWilliams's lower right leg. McWilliams's leg was pinned
between the projection of the car bumper
and the motorcycle. The leg was almost
completely severed in the accident and was
subsequently amputated below the knee.

At about the same time that day, Larry
P. McWilliams, Sr., was also driving along
Route 625. Approximately ten minutes after the accident, McWilliams, Sr., came
upon the scene and saw his son lying on
the ground, receiving first aid. McWilliams, Sr., claims that, as a result of seeing
his son's injuries, he suffered mental and
emotional distress.

McWilliams had been a dirt bike/mini-bike/motorcycle enthusiast since the age of
13 or 14. He purchased the Yamaha Virago 920 from D.T. Van Sice, Inc., in 1986.
Although the Virago was a 1982 model, it
was brand new when McWilliams bought
it. The Virago did not have protective leg
guards or crash bars. At that time, however, tubular metal crash bars to protect the
rider's legs were available on some motorcycle models.

McWilliams had purchased his first motorcycle in about 1980. This was a Yamaha 750 Special which did have crash bars.
At his deposition in this case, McWilliams
had difficulty in describing these crash
bars. He stated that he was not familiar

[1.] Yamaha brought a third party claim against
Feise for indemnification and contribution. In
connection with Yamaha's motion for summary judgment, Feise adopted appellants' arguments,
opposing the motion. Feise is not participating
in this appeal.

**202**

with them; he knew they were chrome bars that "just came around and they had foot pegs on them." Appendix at 93a. McWilliams also acknowledged that he "knew motorcycles were dangerous, but he put it out of his mind and didn't think of it." Appendix at 123a. He knew from the day he bought his first motorcycle that his legs would be exposed when he was riding it. *Id.*

Appellants' claims in this case were supported by the opinions of proposed expert witnesses. Their design expert, Harry C. Peterson, asserted in his report that the Yamaha Virago 920 motorcycle was defectively designed in that, before it was placed on the market, impact-absorbing structures should have been installed to prevent serious, permanent injury to the legs of the motorcycle operator in the case of a collision. Appendix at 325a. Appellants' reconstruction expert, George P. Widas, asserted that Yamaha's failure to provide the warnings it should have "on the subject motorcycle relative to the unsafe conditions produced by ... the lack of collision protection for the lower limbs of the riders of the motorcycle" was a reasonably certain factor in the cause of McWilliams's injuries. Appendix at 342a.

In granting defendants' motion for summary judgment, the district court held that the New Jersey Products Liability Law (NJPLL), N.J.S.A. 2A:58C–1–7, was applicable. Section 3(a)(2) of the NJPLL provides a defense for harms caused by products if the harm "would be recognized by the ordinary person who uses or consumes the product with the ordinary knowledge common to the class of persons for whom the product is intended...." [2] The district court noted that "Section 3(a)(2) was intended, in part, to adopt the 'consumer expectations' test established by comment i to section 402A of the Restatement (Second) of Torts...." [3] *McWilliams v. Yamaha Motor Corp. USA,* 780 F.Supp. 251, 257 (D.N.J.1991). The district court also equated Section 3(a)(2) with the "open and obvious danger" defense articulated by Prosser:

> One limitation commonly placed upon the ... seller's entire liability, is that he is not liable for dangers that are known to the user, or are obvious to him or are so commonly known that it can reasonably be assumed that the user will be familiar with them. Thus, there is certainly no usual duty to warn the purchaser that a knife or an axe will cut, a match will take fire, dynamite will explode or a hammer may mash a finger.

*Id.,* (quoting Prosser, *Law of Torts* 96 (4th ed. 1971)). Following this reasoning, the district court granted summary judgment in favor of Yamaha and Van Sice. In doing so, it predicted that the New Jersey Supreme Court would rule "that a motorcycle, a vehicle specifically designed as an open-air, easily maneuverable, light-weight vehicle, contains an open and obvious risk of lower-leg injury." *Id.* at 260.

The McWilliamses appealed from this decision. We have jurisdiction to hear the appeal under 28 U.S.C. § 1291. The scope of our review of such a grant of summary judgment is plenary. We are required to

**2.** N.J.S.A. 2A:58C–3(a)(2) provides in pertinent part:

a. In any product liability action against a manufacturer or seller for harm allegedly caused by a product that was designed in a defective manner, the manufacturer or seller shall not be liable if:

. . . . .

(2) The characteristics of the product are known to the ordinary consumer or user, and the harm was caused by an unsafe aspect of the product that is an inherent characteristic of the product and that would be recognized by the ordinary person who uses or consumes the product with the ordinary knowledge common to the class of persons for whom the product is intended, except that this para-

graph shall not apply to industrial machinery or other equipment used in the workplace and it is not intended to apply to dangers posed by products such as machinery or equipment that can feasibly be eliminated without impairing the usefulness of the product;

**3.** Comment i of the Second Restatement defines unreasonably dangerous as:

The article sold must be dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics.

Second Restatement, § 402A, comment i.

apply the same test that the district court should use initially. *Williams v. Borough of West Chester*, 891 F.2d 458, 464 (3d Cir.1989). The scope of our review of the district court's interpretation and prediction of applicable state law is also plenary. *Compagnie des Bauxites v. Insurance Co. of North America*, 724 F.2d 369, 371 (3d Cir.1983).

In their appeal, appellants initially challenge the district court's determination that a motorcycle is a product to which the inherent and obvious danger defense of Section 3(a)(2) applies. Next, even if Section 3(a)(2) were to be applied, appellants challenge the failure of the district court to go on to consider whether the installation of crash bars would eliminate the danger of lower leg injury without impairing the usefulness of the motorcycle; under the language of Section 3(a)(2) such a conclusion would except this case from the open and obvious danger defense.

In urging that Section 3(a)(2) should not apply at all, appellants contend that, unlike a match which must burn or a knife which must cut, a motorcycle is not intended to crash; that is not a basic function of its use. Appellants describe a motorcycle's basic function as providing a means of transportation, "to be a motor vehicle, to operate as a motor vehicle." Appellants' Brief at 19.

However, a motorcycle is not the only type of vehicle available for motor transportation. An armored car or a dump truck also offers a means of motor transportation with minimal risk to the lower limbs of its operator. Nevertheless, a motorcycle devotee probably would not choose an armored car as an equivalent means of transportation. Motorcycle riders are interested in a vehicle which is open, light, maneuverable, speedy, and economical. The ensuing risk to the legs of operators of such an open and unprotected vehicle is well known. *See, e.g., Shaffer v. AMF, Inc.*, 842 F.2d 893 (6th Cir.1988); *Toney v.*

*Kawasaki Heavy Industries, Ltd.*, 763 F.Supp. 1356 (S.D.Miss.1991); *Nicholson v. Yamaha*, 80 Md.App. 695, 566 A.2d 135 (1989). Even Larry McWilliams acknowledged that he knew from the day he bought his first motorcycle that there was a risk to his legs—and to his arms and his body as well. Appendix at 123a.

McWilliams's expert witnesses also expressed their opinions that the risk of lower leg injury in motorcycle accidents was well known. Peterson: "The subject accident ... is a common, foreseeable motorcycle accident.... The existence of the danger of severe injuries to the legs of motorcycle operators and passengers in angled impacts with opposing vehicles or obstacles has been documented in the relevant medical/technical/scientific/vehicle-safety literature since at least as early as 1960." Appendix at 325a. Widas: "Side impact with another motor vehicle was an entirely foreseeable design condition arising from the environment in which motorcycles operate." Appendix at 340a.[4]

In predicting that the New Jersey Supreme Court would rule that a motorcycle contains an open and obvious risk of lower-leg injury, the district court referred to the discussion of the "open and obvious" danger defense of Section 3(a)(2) by the New Jersey Supreme Court in *Dewey v. R.J. Reynolds Tobacco Co.*, 121 N.J. 69, 577 A.2d 1239 (1990). Although the New Jersey Supreme Court did not apply the NJPLL in that case, it did discuss the defense at length. In analyzing Section 3(a)(2), the New Jersey Supreme Court stated:

> The foregoing "hybrid" provision [§ 3(a)(2)] combines the "consumer expectations" doctrine for determining whether a product is defective ... with the obvious-danger factor of the risk-utility analysis ... to create a defense to a design-defect claim. In enacting that provision, the legislature drastically changed the method of analyzing products-liability cases. Specifically, the provision has overturned so much of our

4. In discussing the foreseeability of lower leg injury, these experts were expressing their opinions that the motorcycles should have been designed to prevent such injury. Nevertheless, the fact that this danger of leg injury was well known is an inherent part of the experts' conclusions.

decisions in *Suter v. San Angelo Foundry & Mach. Co., supra*, 81 N.J. [150] at 170–71, 406 A.2d [140] 149 [1979] and *O'Brien v. Muskin Corp., supra*, 94 N.J. at 181–82, 463 A.2d 298, as endorsed the application of the "risk-utility" analysis when a plaintiff is unable to establish a defect under the "consumer expectations" test.

.  .  .  .  .

Hereafter, under the Products Liability Law, the consumer-expectations test cannot be avoided in a claim for design defect.

577 A.2d at 1252–53 (citations omitted). In other words, if the danger is open and obvious, *i.e.,* "an unsafe aspect of the product that is an inherent characteristic of the product and that would be recognized by the ordinary person who uses or consumes the product with the ordinary knowledge common to the class of persons for whom the product is intended," § 3(a)(2), that now satisfies the consumer expectation test. The New Jersey courts need no longer go on to a risk-utility analysis if the known and recognized danger is an inherent characteristic of the product.

In light of this discussion by the New Jersey Supreme Court, when we consider it in connection with the district court's cited case law from other jurisdictions concerning the well known risk of lower leg injury to motorcycle operators,[5] and we further consider it along with the opinions of appellants' expert witnesses who recognize the well known nature of the risk and with McWilliams's acknowledgment of his familiarity with the risk, we concur with the district court's prediction that the New Jersey Supreme Court would rule that the open and obvious risk defense is applicable in a motorcycle case. A motorcycle is intended to be a light, open, maneuverable, relatively unencumbered motor vehicle; the risks of driving such a vehicle are well known to those persons who choose to operate one.

Nevertheless, although we conclude that the district court correctly anticipated the likelihood that the New Jersey Supreme Court would find the open and obvious danger defense applicable to the purchase of a motorcycle, we cannot agree with the next conclusion of the district court: that it need not consider whether the risk of leg injury could be eliminated by crash bars without impairing the usefulness of the product. After setting out the open and obvious danger exclusion from liability, Section 3(a)(2) of the NJPLL goes on to provide that this defense "is not intended to apply to dangers posed by products such as machinery or equipment that can feasibly be eliminated without impairing the usefulness of the product...."

The district court determined that this exception to the open and obvious danger exclusion was not applicable here because McWilliams bought his motorcycle for recreational purposes. 780 F.Supp. at 261. In ruling out the applicability of the "equipment and machinery" exception, the district court stated that it was clear from the language and legislative history of the NJPLL that the "New Jersey legislature did not intend the exception for machinery and equipment to apply to products purchased for recreational purposes. Indeed, one commentator stated that this exception is intended to preserve a line of cases requiring safety devices in industrial machinery." *Id.* (citations omitted).

■ However, there is a second exception to the Section 3(a)(2) liability exclusions, which exception is specifically directed at industrial machinery ("this paragraph shall not apply to industrial machinery or other equipment used in the workplace"). In view of this specific provision for industrial machines, we believe that the district court misinterpreted the commentaries about the NJPLL. We cannot agree with the district court's prediction that the New Jersey Supreme Court would not apply the

---

**5.** The district court cited *Toney v. Kawasaki Heavy Indus., Ltd.,* 763 F.Supp. 1356 (S.D.Miss. 1991); *Shaffer v. AMF, Inc.,* 842 F.2d 893 (6th Cir.1988) *Kutzler v. AMF Harley–Davidson,* 194 Ill.App.3d 273, 141 Ill.Dec. 190, 550 N.E.2d 1236 *app. denied,* 132 Ill.2d 546, 144 Ill.Dec. 258, 555 N.E.2d 377 (1990); *Miller v. Dvornik,* 149 Ill. App.3d 883; 103 Ill.Dec. 139, 501 N.E.2d 160 (1986) and *Hunt v. Harley–Davidson Motor Co.,* 147 Ga.App. 44, 248 S.E.2d 15 (1978) in support of its conclusion that the risk of lower leg injury was open and obvious.

general machinery and equipment exception to a type of motor vehicle which manifested a danger that feasibly could be eliminated without impairing the usefulness of the product—even if such a motor vehicle might be used for recreational purposes.[6] Manufacturers and distributors of recreational equipment were not exempt in New Jersey, prior to the enactment of the NJPLL, from liability for injuries incurred in activities known to be dangerous. *See, e.g., Gentile v. MacGregor Mfg. Co.,* 201 N.J.Super. 612, 493 A.2d 647 (L.1985) (strict liability cause of action may exist against reconditioner of football helmet). If recreational equipment and machinery were to be given special treatment under the NJPLL, it would seem likely that such an intention would be clearly expressed in the provisions of the statute. It is not.

We do not, therefore, concur with the district court's prediction that the New Jersey Supreme Court would exempt appellees from liability under the NJPLL on the ground that McWilliams purchased his Yamaha Virago 920 for recreational purposes. Before we can sanction such a Section 3(a)(2) exemption to cover the purchase of this motorcycle, we must consider whether, as provided for in Section 3(a)(2), the risk of lower leg injury to motorcycle operators could be eliminated by installing crash bars without impairing the usefulness of a light-weight, open air, maneuverable vehicle.

Upon review of the record, we note that appellants' experts both opined that crash bars could effectively reduce the danger of lower leg injury to motorcycle operators:

The US–DOT–NHTSA funded a series of studies from 1966 to 1978 which defined, demonstrated, and documented the need for leg-protection structures on motorcycles and which produced and tested prototype devices and prototype "safety" motorcycles. These studies proved the feasibility of

(a) building and installing leg-protection structures on production motorcycles either (1) as standard equipment, (2) as a factory-installed option or (3) as a dealer-installed option and/or

(b) designing the frame of a "new" motorcycle so that the leg-protection devices are an integral part of the frame. (The engineering design methods used to accomplish this modification of the conventional frame of a motorcycle are very similar to the methods Yamaha would have used to incorporate the V-twin engine as a load-carrying member in the frame of the 1982 Yamaha Virago 920.)

Initial Report of Harry C. Peterson, Ph.D., page 7, Appendix at 326a.

[T]he hazard for lower leg injury was substantially mitigated by available designs that were effective and feasible.

Report of George P. Widas, P.E., page 10, Appendix at 342a.

Appellees' experts, on the other hand, do not agree with this conclusion. Robert R. Moderow, Consulting Mechanical Engineer, stated in his report that the overall effect of crash bars would not be beneficial: "[A]lthough there are various leg protective devices proposed for motorcycles, and some do provide protection to lower legs and feet under certain specific accident configurations, the overall effect when considering all injuries and all types of impacts is worse." Appendix at 293a. Warner W. Riley, P.E., stated that "[n]o 'leg protec-

---

**6.** In *Dewey v. R.J. Reynolds Tobacco Co.,* the New Jersey Supreme Court discussed the "obvious danger" defense as applying in products liability cases "except in instances involving industrial machinery or other workplace equipment." 577 A.2d at 1253. This reference to the work place exception, without mentioning the general exception for "dangers posed by products such as machinery or equipment that can feasibly be eliminated without impairing the usefulness of the product," does not indicate that the New Jersey Supreme Court would completely disregard the latter exception in an appropriate case. We predict that any confusion caused by the failure of the New Jersey Supreme Court to mention the latter exception will be quickly cleared up by the court should it be given the opportunity to do so.

This conclusion is reenforced by a review of the definition of "machinery" in *Webster's Ninth New Collegiate Dictionary:* "ia: machines in general or as a functioning unit." "Machine" is defined in *Webster's* as, *inter alia,* "ib: conveyance, vehicle; *specif:* automobile." Thus, it would appear that a motorcycle, being a motor vehicle, fits into a general definition of "machinery."

tion' device has ever been designed and/or constructed without creating the risk of serious additional injury to the upper body." Appendix at 296a. Peter M. Fuller, Ph.D., Professor of Anatomy, concluded that:

> In my opinion the lower leg injury to Mr. McWilliams would not have been substantially reduced or eliminated with the addition of lower leg protection devices as suggested by Dr. Peterson. Given the speeds involved in this accident and the accident configuration, it is my opinion that it would not have been possible to equip the McWilliams motorcycle with a device that would have reduced or eliminated the injury.

Appendix at 301a.

■ From our review of these opposing opinions of the parties' experts, we find that there is clearly a material issue of fact as to whether the addition of crash bars would have eliminated the risk of lower leg injury posed by the operation of a motorcycle without impairing the usefulness of that machine. Because such an issue remained to be resolved by the finder of fact, the district court erred in granting appellees' motion for summary judgment. *See, e.g., United States ex rel. Jones v. Rundle,* 453 F.2d 147, 150 (3d Cir.1971).

■ We will, therefore, remand this case to the district court so that the finder of fact can determine whether the danger of injury to the operator of a Yamaha Virago 920 motorcycle could feasibly be eliminated by the installation of crash bars or similar protective devices without impairing the usefulness of the motorcycle.[7]

If the finder of fact should conclude that crash bars would eliminate the risk of lower leg injury, one would then proceed to a consideration of the merits of appellants' claims arising out of the allegations of defective design and of failure to warn, including the issue of proximate causation.

7. In view of the nature of the expert opinions on record in this case, such a determination should include a consideration of whether the reduction of the risk of lower leg injury, by the installation of crash bars, would augment the risk of other types of injury to the motorcycle operator. From our review of the language of the NJPLL, we predict that the New Jersey Su-

## CONCLUSION

For the reasons stated above, we will affirm the determination of the district court that the purchase of a motorcycle is covered by the "open and obvious" danger exception to liability under Section 3(a)(2) of the NJPLL. However, we will reverse the district court's further conclusion that the exception, for dangers posed by products such as machinery or equipment that can feasibly be eliminated without impairing the usefulness of the product, does not apply under the facts of record in this case. We will remand to the district court for further proceedings in conformity with this opinion.

preme Court would hold that the general equipment and machinery exception to the Section 3(a)(2) open and obvious danger exemption from liability would not be applicable in a case where the elimination of the risk of one injury was replaced by the risk of at least a comparable injury.